IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MARY THIEMAN, | : | Case No. 3:12-cv-171 |
| Plaintiff, | : | District Judge Walter H. Rice |
| | | Magistrate Judge Michael J. Newman |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | | |

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

---

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" within the meaning of the Social Security Act and therefore unentitled to Disability Insurance Benefits ("DIB").

This case is before the Court upon Plaintiff's Statement of Errors (doc. 11), the Commissioner's Memorandum in Opposition (doc. 15), Plaintiff's Reply (doc. 16), the administrative record (doc. 6),[2] and the record as a whole.

## I. BACKGROUND

### A.

Plaintiff filed an application for DIB on February 7, 2007, asserting that she has been under a "disability" since October 1, 2003. PageID 176-78. Plaintiff claims she is disabled due

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.
[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID.

to a number of impairments including, *inter alia*, syncopal episodes[3] and seizure symptoms, extremely low blood pressure, migraine headaches, depression, pain, and memory loss. *See* PageID 227. Following initial administrative denials of her application, Plaintiff received a hearing before ALJ Amelia Lombardo on September 29, 2009. PageID 90-123. On February 26, 2010, ALJ Lombardo issued a written decision, concluding that Plaintiff was not disabled. PageID 63-79. Specifically, ALJ Lombardo's "Findings" were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012;

2. The claimant has not engaged in substantial gainful activity since October 1, 2003, the alleged onset date (20 CFR 404.1571 *et seq.*);

3. The claimant has the following severe impairments: cervical degenerative disc disease; syncopal episodes, diagnosed by the Cleveland Clinic in 2003 as positional orthostatic hypotension; and depression (20 CFR 404.1520(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526);

5. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity [RFC] to perform light work as defined in 20 CFR 404.1567(b) except that her work must involve no exposure to heights, hazards, commercial driving, or balancing. She can perform only unskilled, low stress work (defined as not fast-paced and no assembly line production quotas);[4]

---

[3] "Syncope" means "loss of consciousness, and postural tone caused by diminished cerebral blood flow." *Stedman's Medical Dictionary* 1887 (28th ed. 2006).

[4] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 404.1567. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* § 404.1567(b). Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* § 404.1567(a).

6.      The claimant is unable to perform any [of her] past relevant work (20 CFR 404.1565);

7.      The claimant was born [in...] 1963 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563);

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564);

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)); and

11.     The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2003 through the date of this decision (20 CFR 404.1520(g)).

PageID 65-79 (brackets, ellipses and footnote added).

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 55-59. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this appeal on June 8, 2012. Doc. 1.

**B.**

At the September 29, 2009 administrative hearing, Plaintiff testified that she has had syncopal (*i.e.*, "passing out") episodes for the past six years. *See* PageID 98, 193. Her driver's license was revoked in 2006 following a synocal episode at the grocery store. *See* PageID 94-95. She has attempted to get her driver's license back, but has been unable to obtain the required doctor's statement -- that she will not have more episodes. *Id.*

Plaintiff estimated that she passes out once or twice per month.  PageID 99.  She usually passes out for one minute, but it can take up to an hour for her "to get [her] bearings," and for her speech to improve.  *Id.*  Further, if she stands for a long period of time, she becomes "light-headed."  *Id.*  Plaintiff has lost two jobs -- as a nurse's assistant and a janitor -- as a result of her syncopal episodes.  PageID 102-03, 111-12.  Plaintiff has visited the emergency room on many occasions -- more than twenty times -- following these episodes.  PageID 115.  She testified, however, that she only visits the emergency room when the episodes occur in public places and bystanders call for assistance.  *Id.*

Plaintiff underwent extensive testing to determine the cause of her syncopal episodes.  PageID 112-13.  Physicians at the Cleveland Clinic finally diagnosed her with orthostatic hypotension.[5]  PageID 113.  Plaintiff has had three surgeries (*i.e.*, a hysterectomy, a surgery to remove tumors from her neck, and a kidney surgery) at the Cleveland Clinic.  PageID 114, 117-18.  Since having those surgeries and taking medication for her orthostatic hypotension, she has the episodes on a less frequent basis (*i.e.*, once per month rather than three to four times per week), and the episodes also tend to be less severe.  PageID 114-15, 117-18.

Additionally, Plaintiff testified that she suffers from migraines approximately two times per week.  PageID 99-100.  She takes medication for her migraines, but they do not alleviate the pain.  *Id.*

Plaintiff further testified that she has suffered from depression since she was in a car accident in 2000.  PageID 101.  She cries "all the time," and she "can't stop once [she] start[s]."  *Id.*  Her depression is related to her pain.  *Id.*  Further, her husband believes that she has had problems with her memory and concentration since the car accident.  PageID 101-02.

---

[5]  "Orthostatic hypotension" is "a form of low blood pressure that occurs in a standing posture."  *Stedman's Medical Dictionary* 937 (28th ed. 2006).

Moreover, Plaintiff testified that she suffers from stomach and back pain, whether she is sitting or standing, on a daily basis.  PageID 103.  Plaintiff estimated that she can stand for one hour, and sit for half an hour.  PageID 104.  With respect to walking, she has "bad days" and "good days"; on "good days," she can go to the grocery store, and on "bad days," she can only make it across her living room.  PageID 103.  She testified that she can lift no more than a gallon of milk.  PageID 104.

### C.

Brian Womer, a vocational expert ("VE"), also testified at the hearing.  PageID 118-20.  He opined that Plaintiff cannot perform any of her past relevant work.  PageID 119.   However, the VE testified that a hypothetical individual -- with Plaintiff's vocational profile and the RFC described in Finding No. 5 (a reduced range of light work) -- could perform a total of 20,000 jobs in the regional economy.  *Id.*  The VE did not opine as to the number of jobs available at the sedentary level.

On cross examination, the VE acknowledged that, if Plaintiff were absent one day each week, she would not be able to perform full-time work at any exertional level.  PageID 119-20.  The VE also acknowledged that if Plaintiff were off-task one-third of the work day due to her symptoms, she would likewise not be able to maintain full-time work. PageID 120.

### II.

### A.

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria.  42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-

46 (6th Cir. 2007).  In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled.  *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001).  Thus, the ALJ has a "'zone of choice' within which [he or she] can act, without the fear of court interference."  *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).  "[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

**B.**

To be eligible for DIB benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A).  Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from: (1) performing his or her past job; and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations.  20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1.  Has the claimant engaged in substantial gainful activity?

2.  Does the claimant suffer from one or more severe impairments?

3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.  Considering the claimant's RFC, can he or she perform his or her past relevant work?

5.  Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001).  A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition.  *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

## III.

On appeal, Plaintiff challenges the ALJ's finding that she does not meet Listing § 11.03, and the weight the ALJ accorded to her treating doctor.[6]  Doc. 11 at PageID 1186-96.

## A.

Plaintiff's first argument -- that the ALJ erred at Step Three by determining that she did not meet or equal Listing § 11.03 -- is unavailing.  The Listing of Impairments "describes impairments the SSA considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009) (citing 20 C.F.R. § 404.1525(a)) (internal

---

[6] Plaintiff also argues that the ALJ improperly evaluated her credibility.  In light of the Court's favorable decision on Plaintiff's argument concerning the weight afforded to her treating physician, *see infra*, the Court need not determine whether or not the ALJ's credibility assessment was erroneous. Nonetheless, having carefully reviewed this claim and recognizing that an ALJ's credibility findings are entitled to considerable deference and should not be lightly discarded, *see Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993), the Court finds this assignment of error unpersuasive.

quotations omitted).  Plaintiff has the burden of proving that she meets or equals all of the criteria of a listed impairment.  *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987).  Listing § 11.03 provides as follows:

> 11.03 Epilepsy – non convulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern including all associated phenomena, occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R., Pt. 404, Subpt. P, App.1, § 11.03.

The ALJ's determination -- that Plaintiff does not meet or equal Listing 11.03 -- is supported by substantial evidence.  PageID 67.  Based on Plaintiff's own testimony at the administrative hearing -- that she passes out "maybe once or twice" per month, PageID 98-99, 114-15 -- she does not satisfy Listing § 11.03's seizure-frequency requirement -- *i.e.*, having seizures "more frequently than once weekly in spite of at least [three] months of prescribed treatment."  Additionally, Plaintiff's testimony establishes that her syncopal episodes are not of sufficient severity to meet Listing § 11.03.  *See* PageID 99, 104-07.  Moreover, there is no medical opinion in the record that Plaintiff meets or equals the criteria of any listed impairment. Plaintiff, accordingly, has failed to meet her burden of establishing that she meets or equals Listing § 11.03.  *Accord Mughni v. Astrue*, No. 1:11-cv-18, 2011 U.S. Dist. LEXIS 143235, at *36, 2011 WL 6307831, at *12 (S.D. Ohio Nov. 16, 2011) (finding plaintiff failed to establish he had seizures on a more than weekly basis, as required to meet  Listing § 11.03).

**B.**

On the other hand, Plaintiff's third assignment of error -- that the ALJ improperly weighed her treaters' medical opinions -- is well-taken.  After finding that Plaintiff did not meet any Listed Impairment, the ALJ, at Step Four, determined that Plaintiff cannot perform any of

her past relevant work.  *See* PageID 77-78.  The ALJ then proceeded to Step Five.  As discussed above, at Step Five, the burden shifts from the claimant to the Commissioner -- to show that there is other gainful employment available in the national economy that the claimant is capable of performing.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  The Commissioner's Step Five determination must be supported by substantial evidence.  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002).  "This kind of substantial evidence may be produced through reliance on the testimony of a [VE] in response to a hypothetical question, but only if the question accurately portrays [the claimant's] individual physical and mental impairments."  *Id.* (internal quotations and alternations omitted).  Here, the ALJ's Step Five determination is unsupported by substantial evidence because the ALJ incorrectly weighed the treating physicians' medical opinions in formulating Plaintiff's RFC.  The hypothetical questions posed to the VE, therefore, did not accurately portray Plaintiff's impairments.

Social Security regulations require an ALJ give the opinion of a treating physician controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).  "Even if [a] treating physician's opinion is not given controlling weight, there remains a presumption, albeit a rebuttable one, that the opinion…is entitled to great deference."  *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (internal quotations and citations omitted).  In evaluating the weight given to a medical opinion, the ALJ must apply certain factors, including the length of the treatment relationship, frequency of examination, the treater's specialization, supportability of the opinion, and consistency of the opinion with the record as a whole.  20 C.F.R. §§ 404.1527(c)(1)-(6); *Bowen*, 478 F.3d at 747.

The ALJ is further required to provide "good reasons" for discounting the weight given to a treating source opinion. 20 C.F.R. § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 SSR LEXIS 9, at *11-12, 1996 WL 374188, at *5 (July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Brad Snider, M.D., Plaintiff's treating physician, opined that Plaintiff is limited to standing and walking no longer than one hour at a time, and for a total of four hours in an eight-hour work day.[7] PageID 902. Additionally, Dr. Snider recommended several environmental restrictions, such as avoiding heights and machinery, as well as several postural restrictions, such as no climbing, balancing or crouching. PageID 902-03. He concluded that Plaintiff is incapable of performing light or sedentary work, and would likely miss work more than three times per month due to her impairments and/or treatment. PageID 905.

The ALJ afforded Dr. Snider's opinion "little weight," claiming it is unsupported by his treatment notes and the medical record. PageID 76. The ALJ first erroneously dismissed Dr. Snider's opinion based on a notation in his treatment notes that Plaintiff had a normal neurological examination. *Id.* Plaintiff has undergone extensive testing to determine what

---

[7] It appears Dr. Snider mistakenly transposed two of the questions on the Medical Assessment of Ability to do Work-Related Activities form. *See* PageID 902. The ALJ interpreted the form as stating that Plaintiff can stand "no more than one hour at a time for a total of four hours in an eight-hour day." PageID 76. The Court agrees with the ALJ's interpretation.

causes her to pass out and, based on positive "tilt table tests,"[8] several physicians have concluded the episodes are caused by a drop in blood pressure (not due to a neurological disorder). Accordingly, these physicians have diagnosed her with positional orthostatic hypotension.  *See, e.g.*, PageID 637, 642, 766, 991-94, 1067-70.  Additionally, the ALJ inappropriately discounted Dr. Snider's opinion on the grounds that his assessment was made prior to a March 2009 emergency room visit for a syncopal episode -- during which time the attending physician claimed Plaintiff feigned an episode.  *See* PageID 76, 950.  One allegation in an emergency room record does not allow the ALJ to disregard the otherwise extensive medical records documenting Plaintiff's recurrent syncopal episodes.  *See, e.g.*, PageID 334, 341, 474-76, 522, 542-45, 578-79, 588-89, 595, 598-99, 607-08, 617-18, 626-29, 634, 637, 642, 689-92, 699-703, 713-16, 720-21, 781, 908-09, 913-14, 924, 948-49; *see also Gayheart*, 710 F.3d at 378 (noting the ALJ improperly focused on "isolated pieces of the record" in disregarding a treating source opinion).

Moreover, the ALJ fails to identify the substantial evidence that purportedly conflicts with Dr. Snider's disability finding.  The ALJ gave "some weight" to two conclusory opinions of state agency non-examining physicians -- that Plaintiff has no standing/walking limitations.[9]  *See* PageID 75-76, 677-84, 759.  However, the ALJ cannot reject a treating source opinion simply because there are conflicting medical opinions of non-treating and non-examining doctors in the record.  *See Gayheart*, 710 F.3d at 377.  If that were the standard, "the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion."  *Id.*

---

[8] A "tilt table test" is a procedure that rotates a patient on a table into a standing position, and is used to determine the cause of fainting.  *Stedman's Medical Dictionary* 1930, 1963 (28th ed. 2006); *see also Lyons v. Astrue*, No. 11-4318, 2012 WL 1969321, at *2 n.6, 2012 U.S. Dist. LEXIS 75678, at *6 n.6 (E.D. Pa. May 31, 2012).

[9] The ALJ also gives credit to the opinion of Bruce Brown, M.D.  *See* PageID 76.  However, Dr. Brown did not treat Plaintiff for her syncopal episodes, but for neck and back pain.  *See* PageID 510-14.

The Court recognizes that a treating physician's opinion on an issue reserved to the Commissioner -- such as whether or not the claimant is "disabled" -- is not entitled to special deference. *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007). To that end, the ALJ did not err in failing to adopt Dr. Snider's conclusion that Plaintiff is unable to do light or sedentary work. *See* PageID 905. Nevertheless, the ALJ did err in failing to incorporate Dr. Snider's opinion -- that, due to Plaintiff's history of positional syncopal episodes, she cannot stand/walk longer than one hour at one time, and for a total of four hours in one work day -- into Plaintiff's RFC. PageID 902. Instead, the ALJ determined that Plaintiff is capable of performing a reduced range of light work. *See* PageID 68. Light work may require "a good deal of walking or standing," 20 C.F.R. § 404.1567(b), and the ALJ failed to provide any additional walking/standing restrictions. The ALJ's proposed hypothetical to the VE, therefore, is unsupported by substantial evidence because it failed to incorporate the standing/walking limitations imposed by Dr. Snider. As such, the testimony of the VE is insufficient to carry the Commissioner's burden at Step Five. The Commissioner's decision should be reversed, and this case remanded, under Sentence Four, so the ALJ can take additional VE testimony and resolve this factual issue.

## IV.

For the foregoing reasons, the Court finds that, because the hypothetical questions posed to the VE and relied upon by the ALJ did not accurately describe Plaintiff's impairments, and because the ALJ misapplied Social Security regulations in weighing the medical opinions of record, the ALJ's decision is unsupported by substantial evidence and merits reversal. *See Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 175-76 (6th Cir. 1994). The Court further finds that a judicial award of benefits is unwarranted in the case at this time because the

record does not show that "the proof of disability is overwhelming or… the proof of disability is strong and evidence to the contrary is lacking."  *Id.* at 176.  Accordingly, the Court recommends that this matter be remanded to the Commissioner of Social Security under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion.

**IT IS THEREFORE RECOMMENDED THAT:**

1.    The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2.    This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3.    This case be **CLOSED**.

July 12, 2013                                                                       s/**Michael J. Newman**
                                                                                    United States Magistrate Judge

## <u>NOTICE REGARDING OBJECTIONS</u>

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).